UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAMIAN BUTLER, et al.,

    Plaintiffs,

v.                                                Case No. 19-2377-JAR

DAIMLER TRUCKS NORTH AMERICA
LLC, and DAIMLER AG,

    Defendants.

# ORDER

In this product-liability case, plaintiffs allege defendant Daimler Trucks North America LLC ("DTNA") is liable for an accident in which a semi-tractor truck collided with three vehicles, killing five people.[1] Plaintiffs bring strict-liability and negligence claims premised on DTNA's failure to equip the semi-tractor with forward-collision-warning ("FCW") and automatic-emergency-braking ("AEB") systems.

The court held a scheduling conference on December 10, 2019. During the conference, the parties informed the court that they agree there is good cause under Fed. R. Civ. P. 26(c) for the entry of a protective order to govern documents they will exchange in discovery, but they disagree about the scope and form of the order. The court directed them to confer further about a proposed protective order and set a procedure for filing a

---

[1] A second named defendant, Daimler AG, has not appeared in this case.

motion to resolve any remaining disputes.² The parties have now filed a joint motion (ECF No. 38) asking the court to decide two disputed issues:

(1) whether plaintiffs' counsel should be allowed to share documents defendants produce and designate as confidential with lawyers not involved in this case; and

(2) whether the protective order should require that, after the case is concluded, counsel return or destroy confidential documents produced by other parties.

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."³ For the reasons stated below, the court declines to include a sharing provision in the protective order and accepts DTNA's proposal that counsel be required to return or destroy confidential documents within ten years of the conclusion of litigation.

1. Whether the Protective Order Should Include a Sharing Provision

The parties agree that the protective order generally should prohibit disclosure of discovery designated as "confidential" to persons outside the litigation.⁴ But plaintiffs request that the order include an exception that would allow plaintiffs' counsel to share confidential information with "lawyers involved in pending or contemplated lawsuits

---

² ECF No. 32 at 4. In the future, both sides are expected to comply with page limitations imposed by the court and to avoid lengthy, multi-page, single-spaced footnotes that bypass those limitations.

³ *Hilton v. Sedgwick Cty.*, No. 15-2021-JAR, 2015 WL 3904362, at *1 (D. Kan. June 25, 2015) (internal quotations and citations omitted).

⁴ *See* ECF No. 38-3, plaintiffs' redlined version of DTNA's proposed protective order, at ¶ 6(b).

2
O:\ORDERS\19-2377-JAR-38.docx

against Defendants in which the claims or allegations include the failure to equip heavy trucks with [FCW] and [AEB] system technologies as standard equipment" if such persons agree to be bound to the terms of the protective order and to this court's jurisdiction.[5] Plaintiffs assert such "sharing provisions" are common in courts across the country and create efficiencies in the judicial system by alleviating costly discovery for parties in related cases. They assert sharing provisions reduce the volume of discovery requests and make proceedings more truthful because the responding party will aim to be consistent in addressing similar issues across suits. Plaintiffs further contend DTNA's confidential materials will be protected because they will not be shared unless the recipients in collateral litigation agree to be bound by the protective order and to submit to the court's jurisdiction.

DTNA opposes the inclusion of a sharing provision in the protective order. DTNA submits that disclosure of its highly sensitive business information should be limited to the greatest extent possible to prevent compromise of the information, particularly since dissemination would cause it competitive harm. DTNA notes limiting disclosure to this case does not harm plaintiffs' ability to litigate their claims. Finally, DTNA argues a sharing provision would actually decrease efficiency in this action, as the court would be forced to monitor, and potentially litigate, compliance with the protective order by nonparties.

---

[5] *Id.*

3
O:\ORDERS\19-2377-JAR-38.docx

The parties cite caselaw from across the country supporting their respective positions—jurisdictions appear to be split on whether sharing provisions are appropriate or useful. In the District of Kansas, however, judges have consistently rejected the inclusion of sharing provisions in protective orders. In *McKellips v. Kumho Tire Co.*, for example, the plaintiffs made many of the same arguments advanced by plaintiffs here: that adding a sharing provision in a products-liability action "promotes efficiencies in terms of discovery for both plaintiffs' attorneys and for the defendant, reduces discovery costs, promotes public safety, and facilitates the identification of discrepancies or inconsistencies in discovery produced by defendants in different cases."[6] Magistrate Judge Theresa James rejected the plaintiffs' request, noting that including a "preemptive" sharing provision in a protective order places the power solely in the hands of plaintiffs' counsel to determine which outside attorneys meet the criteria for disclosure of defendants' confidential information, with no advance notice or opportunity to object given to defendants.[7] Judge James was not persuaded that a sharing provision would promote efficiency, and she was concerned that such a provision would "open the barn doors" to disclosure of confidential information to "yet-unidentified collateral litigants."[8] The better course, she determined, was to permit the plaintiffs to make sharing requests on a case-by-case basis, should they

---

[6] No. 13-2393-JTM, 2014 WL 3541726, at *1 (D. Kan. July 17, 2014).

[7] *Id.* at 1-2.

[8] *Id.* at 2.

4

become aware of other product-liability cases involving similar allegations against the defendants.

In *Hilton v. Sedgwick County,* Magistrate Judge Karen Humphreys also rejected the inclusion of a sharing provision in a protective order. Judge Humphreys stated she agreed with the decision in *McKellips* that it is "more appropriate to make a decision regarding the disclosure of confidential information to parties in collateral litigation 'on a case-by-case basis during the course of this litigation.'"[9] Plaintiffs have not articulated any way in which *McKellips* or *Hilton* was wrongly decided. In fact, the cases cited by plaintiffs support this case-by-case approach, which allows a court to evaluate a specific collateral litigant's request and need for shared discovery.[10]

---

[9] 2015 WL 3904362, at *2. Such was the process applied in *Zapata v. IBP, Inc.,* in which Magistrate Judge Gerald Rushfelt was asked to decide whether a protective order should issue prohibiting disclosure of confidential information in *specific* collateral litigation. 160 F.R.D. 625, 627-28 (D. Kan. 1995).

[10] *See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131-32 (9th Cir. 2003) (holding that a collateral litigant's request to modify a protective order to gain access to discovery should not be "automatically" granted, but should only be granted if the collateral litigant demonstrates "relevance of the protected discovery to the collateral proceedings and its general discoverability therein"); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (considering whether discovery could be shared with a specific, collateral, "bona fide" litigant whom the Judicial Panel on Multidistrict Litigation suggested should have access to the discovery). Plaintiffs also cite *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986), but *Jackson* addressed the *admissibility* of similar-accident evidence, saying nothing about sharing provisions in *discovery*.

5

Plaintiffs note that the Tenth Circuit, in *United Nuclear Corp. v. Cranford Ins. Co.*, upheld the modification of a protective order to permit collateral litigants to access information produced in discovery.[11] But as *McKellips* and *Hilton* observed, *United Nuclear* is distinguishable in that known collateral litigation was already proceeding and could be evaluated by the district court—a preemptive sharing provision placing sole power in plaintiffs' counsel, without oversight by the court or a chance to be heard by defendants, was not at issue.[12] More recently, the Tenth Circuit considered a protective order containing a non-sharing provision that prevented the parties "from sharing or using materials defined as 'proprietary' and 'confidential' for any purpose except preparation for trial unless otherwise authorized by the disclosing party or the court," and enforced the provision.[13]

After considering the issue, the court finds the reasoning in *McKellips* and *Hilton* persuasive. A preemptive sharing provision places unilateral decision making with plaintiff's counsel, eliminates the opportunity for defendants to weigh in, and removes

---

[11] 905 F.2d 1424, 1427 (10th Cir. 1990).

[12] In addition, *United Nuclear* noted sharing could be denied if the party opposing disclosure demonstrated its rights would be prejudiced by the disclosure. Although the Tenth Circuit found that a "desire to make it more burdensome for Intervenors to pursue their collateral litigation is not legitimate prejudice," 905 F.2d at 1428, DTNA should have the opportunity to demonstrate that disclosure to a particular non-party could prejudice its right to protect its proprietary business information.

[13] *Miller v. Inst. of Def. Analyses*, __ Fed. App'x __, 2019 WL 6997900, at *8 (10th Cir. Dec. 20, 2019).

control from the court. The court agrees with DTNA that even given a recipient's agreement to be bound by the protective order, the inclusion of a sharing provision greatly increases the risk that DTNA's commercially sensitive information will be obtained by competitors.[14] Sharing discovery would not further the efficient resolution of *this* case and would impose an additional burden on the court to monitor non-parties' compliance with the protective order for a period of, as set forth below, more than ten years.[15] Plaintiffs have not addressed the practical concerns raised by DTNA about how the court would enforce the protective order with respect to non-parties. DTNA's interest in protecting its confidential and proprietary information, and the court's interest in bringing this case to efficient resolution, outweigh plaintiffs' less-tangible interests in aiding other potential would-be litigants who may only be *considering* bringing suit against defendants.[16]

---

[14] *See Williams v. Taser Int'l, Inc.*, No. 1:06-CV-0051-RWS, 2006 WL 1835437, at *2 (N.D. Ga. June 30, 2006) (finding a sharing provision heightens the risk that competitors will gain access to confidential information because "the more widely confidential documents are disseminated, it becomes more likely those documents will be released").

[15] Magistrate Judge Bostwick did enter a protective order that included a sharing provision in *Cowan v. Gen. Motors Corp.,* No. 06–1330, 2007 WL 1796198, at *3-4 (D. Kan. June 19, 2007). In that case, however, both the plaintiff and the defendant had proposed sharing provisions to their protective order, but with differing procedures. Although a sharing provision was allowed in the protective order, the provision was subject to limitations proposed by the defendant, including a requirement that any attorney involved in collateral litigation contact the defendant's attorney, who would then determine whether the collateral litigation involved a substantively similar product and issues.

[16] The court's analysis gives no weight to DTNA's incorrect argument that the absence of a sharing provision in the District of Kansas model form protective order supports DTNA's position. To the contrary, the court recognizes no presumption in favor of that form language over other language proposed by a party.

O:\ORDERS\19-2377-JAR-38.docx

The court finds the preemptive and broad sharing provision requested by plaintiffs ill-advised at this early stage of the case and, therefore will not include it in the protective order. However, as this case develops, should plaintiffs contend there is good cause to share specific information produced by DTNA with a specific third-party, plaintiffs may file a targeted motion with the court seeking limited relief from the protective order. DTNA will, of course, have an opportunity to respond to such a motion.

    2. <u>Whether the Protective Order Should Require the Return/Destruction of Confidential Information After Litigation</u>

The District of Kansas model form protective order includes a provision requiring the return of confidential documents to the producing party soon after the conclusion of litigation.[17] Plaintiffs suggest such a provision violates legal ethics rules, leads to "the risk of spoliation in the event of a subsequent legal malpractice proceeding," and hampers the sharing of documents with non-parties.[18] Plaintiffs request that the protective order instead include a provision stating, "All counsel in this case may maintain copies of any documents designated as containing Confidential Information deemed necessary by counsel for the preservation of their files in accordance with controlling ethical and common law rules."[19]

DTNA agrees that the protective order should include a provision that permits counsel to maintain its work product indefinitely, but objects to plaintiffs' request that other

---

[17] D. Kan. Model Form Protective Order at ¶ 10.
[18] ECF No. 38-4 at 10.
[19] ECF No. 38-3 at ¶ 10(b).

confidential information never be returned. DTNA suggests a compromise to address plaintiffs' ethical and malpractice concerns. Specifically, DTNA suggests language that would require the return of confidential documents "within ten (10) years after this litigation concludes."[20]

The court finds DTNA's compromise reasonable and supported by caselaw.[21] The ten-year return requirement addresses the specific concerns identified by plaintiffs. First, it satisfies Kansas Rule of Professional Conduct 1.15(a), which plaintiffs state, "obligates plaintiffs' counsel to keep plaintiffs' property for five years after termination of the representation," and KBA Legal Ethics Opinion No. 15-01, which advises a "good rule of thumb" is for counsel to keep a client's file for ten years after litigation concludes.[22] DTNA's proposal also would allow plaintiffs' counsel to keep documents past the limitations period for legal malpractice claims.[23] Plaintiff's third concern, that a return

---

[20] ECF No. 38-1.

[21] *See Rasnic v. FCA US LLC*, No. 17-2064-KHV, 2018 WL 780556, at *2 (D. Kan. Feb. 8, 2018) (ruling the return of documents at the conclusion of litigation is supported by D. Kan. case law and the form protective orders in the District of Kansas, the Eastern District of Missouri, and the Western District of Missouri); *McKellips*, 2014 WL 3541726, at *2 (ruling "that seven and half years is a reasonable compromise for the retention of confidential information following termination of the lawsuit").

[22] *See* ECF No. 38-4 at 10 n.5.

[23] *See Velasquez v. Philips Elecs. N. Am. Corp.,* No. 13–1463–DDC, Protective Order, Doc. 16, at *8-9 (D. Kan. April 10, 2014) (requiring the return of documents to defense counsel within 90 days of the final conclusion of the action, but requiring defense counsel to retain the records for the two-year limitations period for legal malpractice claims); *Kramanak v. Kan. City, Kan. Pub. Schs.*, No. 14–2614–JAR, Protective Order, Doc. 14, at *7-8 (Mar. 26, 2015) (same).

provision hampers the sharing of documents with non-parties, is moot because the court has declined to include a sharing provision in the protective order.  In its discretion, the court will therefore include DTNA's proposed ten-year document-return provision in the protective order.

IT IS THEREFORE ORDERED that the joint motion for entry of a protective order (ECF No. 38) is granted.  Simultaneously with this order, the court will enter a protective order consistent with the rulings made in this order.

Dated January 10, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

10
O:\ORDERS\19-2377-JAR-38.docx