## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAMIAN BUTLER, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:19-CV-2377-JAR-JPO** |
| **DAIMLER TRUCKS NORTH AMERICA, LLC, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Damian Butler, Alexander Cohen, Gerald Cohen, William Cohen, Nicole Gates, Alisha Mireles, Terrie Myers, and Diane Sanford (collectively, "Plaintiffs") bring this action against Defendants Daimler Trucks North America LLC ("DTNA") and Daimler AG, alleging causes of action for strict product liability and negligence related to a fatal, multivehicle crash involving a Freightliner semi-truck trailer (the "Freightliner") designed and manufactured by DTNA. This matter comes before the Court on Defendant Daimler AG's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 47) and Plaintiffs' Motion for Leave to File a Third Amended Complaint (Doc. 50). At Plaintiffs' request, the Court permitted jurisdictional discovery.[1] Jurisdictional discovery is now complete, both motions are fully briefed, and the Court is prepared to rule. For the reasons set forth below, Daimler AG's motion to dismiss is granted and Plaintiffs' motion for leave to amend is denied.

---

[1]Doc. 60.

## I.      Procedural History

On July 10, 2019, Plaintiffs filed their Complaint.  Then, on September 23, 2019, before either DTNA or Daimler AG responded, Plaintiffs filed an Amended Complaint.  Plaintiffs were permitted to amend their complaint a second time in order to clarify the citizenship status of the parties.  After that amendment, DTNA filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), arguing that this Court lacked personal jurisdiction over it, and that even if the Court had jurisdiction, Plaintiffs' claims were preempted and violated the doctrine of separation of powers.  The Court denied DTNA's motion to dismiss on January 10, 2020, finding that while it does not have specific personal jurisdiction over DTNA, it does have general personal jurisdiction by consent based on DTNA's registration to do business in Kansas.  The Court further found that Plaintiffs' claims are not preempted by federal law or otherwise barred by the separation-of-powers doctrine.[2]

Following the Court's January 10, 2020 Order, Daimler AG filed its own motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In support of its motion, Daimler AG argues that the Court does not have specific jurisdiction over it for the same reasons the Court held it does not have specific jurisdiction over DTNA.  Daimler AG also argues it has not consented to general personal jurisdiction in Kansas because it is not registered to do business under K.S.A. § 17-7931, which was the sole basis on which this Court found it had general personal jurisdiction over DTNA.

Plaintiffs then filed the following: (1) a substantive response to Daimler AG's motion to dismiss; (2) a motion for leave to file their proposed Third Amended Complaint; and (3) a motion to stay deadlines pending jurisdictional discovery.  The Court granted Plaintiffs' motion

---

[2]Doc. 45.

to stay deadlines to permit jurisdictional discovery on February 19, 2020,[3] and the parties engaged in such discovery until May 18, 2020.  The parties then submitted additional memoranda and briefing on the intertwined issues of personal jurisdiction and Plaintiffs' motion for leave to amend their complaint.  The Court first addresses the legal standard for motions to dismiss for lack of personal jurisdiction and motions for leave to amend, then turns to Daimler AG's motion to dismiss followed by Plaintiffs' motion for leave to file their proposed Third Amended Complaint to add additional jurisdictional allegations.

## II.    Legal Standard for Motions to Dismiss Based on Lack of Personal Jurisdiction

A plaintiff bears the burden of establishing personal jurisdiction as to each defendant.[4]  In the absence of an evidentiary hearing, the plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[5]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[6]  Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[7]  When a defendant has produced evidence to support a challenge to personal jurisdiction, the plaintiff has a duty to come forward with competent proof in support of

---

[3]Doc. 60.

[4]*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[5]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008) (first citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); then citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

[6]*Id.* (quoting *OMI Holdings, Inc.*, 149 F.3d at 1091).

[7]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citing *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

the jurisdictional allegations of the complaint.[8]  Courts must resolve all factual disputes in favor

of the plaintiff.[9]  Conflicting affidavits are also resolved in the plaintiff's favor, and "the

plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the

moving party."[10]  If the plaintiff makes a prima facie showing of jurisdiction, "a defendant must

present a compelling case demonstrating 'that the presence of some other considerations would

render jurisdiction unreasonable.'"[11]

### Facts Relevant to Personal Jurisdiction

On July 11, 2017, Teresa Butler accompanied by Karen Kennedy, Sheldon Cohen

accompanied by Virginia Cohen, and Ricardo Mireles were driving their respective vehicles

westbound on I-70 in Kansas.  Behind these three cars, Kenny Ford was operating the

Freightliner.  Westbound traffic slowed, and Ford failed to adequately reduce the speed of the

Freightliner.  As a result, it collided with the three passenger vehicles and killed all five

occupants.  The Freightliner was not equipped with a forward collision warning system ("FCW")

or an automatic emergency braking system ("AEB").  Plaintiffs' claims relate to the design,

manufacture, and sale of the Freightliner without FCW and AEB systems.

Plaintiffs have the following citizenship.  Damian Butler is an Illinois resident.

Alexander Cohen, Gerald Cohen, Nicole Gates, and Terrie Myers are all Kansas residents.

William Cohen is a North Carolina resident, Alisha Mireles is a Wisconsin resident, and Diane

Sanford is an Indiana resident.

---

[8]*Pytlik*, 887 F.2d at 1376 (citing *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir. 1947)); *see also Shrader*, 633 F.3d at 1248 (citing *Wenz*, 55 F.3d at 1505).

[9]*Dudnikov*, 514 F.3d at 1070.

[10]*Behagen*, 744 F.2d at 733 (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)).

[11]*OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

DTNA is a Delaware limited liability company registered to do business in Kansas.  The only member of DTNA is Daimler Trucks & Buses US Holdings, Inc., which is a Delaware corporation with its principal place of business in Oregon.  DTNA designs, manufactures, tests, inspects, markets, and sells vehicles, including the Freightliner at issue.  Plaintiffs do not allege that the design or manufacture of the Freightliner occurred in Kansas or otherwise bore any relationship to Kansas.  However, DTNA has conducted business in Kansas in a variety of ways, including entering into contracts, sending communications, maintaining websites, advertising, owning dealerships, selling vehicles, providing vehicle maintenance, and performing warranty repair.  DTNA sold the Freightliner at issue to an authorized dealer, who sold it to Indian Creek Express, LLC.  There is no allegation that either the authorized Freightliner dealer or Indian Creek Express, LLC is located in Kansas or that the sale of the Freightliner took place in Kansas.  Indian Creek Express, LLC's employee, Kenny Ford, was driving the Freightliner in Kansas at the time of the accident.

DTNA is an indirect subsidiary of Daimler AG.  On Daimler AG's public website, DTNA is listed as a "business unit" of Daimler AG.[12]  The website also calls DTNA's freightliner trucks "our trucks," referring to the Daimler family of corporate entities.[13]  However, an uncontroverted affidavit submitted by Daimler AG's in-house counsel states that Daimler AG is a German-based corporation with its principal place of business in Stuttgart, Germany, and that while DTNA is an indirect subsidiary of Daimler AG, the two are separate, legally distinct entities that each observe corporate formalities to maintain their separate legal

---

[12]*See* Doc. 72 at 7.

[13]*Id.* at 8.

existence.[14]  Daimler AG did not design, manufacture, or distribute the Freightliner involved in this lawsuit.[15]

### III.    Legal Standard for Motions to Amend

Parties may amend pleadings "once as a matter of course" before trial if they do so within twenty-one days of serving the pleading or, "if the pleading is one to which a responsive pleading is required," within twenty-one days of service of a responsive pleading or motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[16]  Other amendments before trial are allowed "only with the opposing party's written consent or the court's leave."[17]  Courts "should freely give leave when justice so requires."[18]  Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[19]  A court may deny leave to amend based on futility when the complaint, as amended, would be subject to dismissal for any reason.[20]  To determine whether a proposed amendment would be futile, courts analyze the proposed amendment under the standard for a motion to dismiss.[21]  Whether to allow a proposed amendment, after the permissive period, addresses the sound discretion of the court.[22]

---

[14]Hi-Zin Pak Decl. ¶ 5, Doc. 48-1.  Daimler AG is an "Aktiengesellschaft," a German legal entity similar to a stock company.  *Id*. ¶ 2.

[15]*Id*. ¶ 6.

[16]Fed. R. Civ. P. 15(a)(1).

[17]Fed. R. Civ. P. 15(a)(2).

[18]*Id*.; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[19]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[20]*Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (citing *TV Commc'ns Network, Inc., v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992)).

[21]*Dockery v. Unified Sch. Dist. No. 231*, 406 F. Supp. 2d 1219, 1224 (D. Kan. 2006).

[22]*See Foman*, 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Minter*, 451 F.3d at 1204.

***Additional Factual Allegations Relevant to Personal Jurisdiction from Proposed Third Amended Complaint***

Plaintiffs propose filing a Third Amended Complaint to add new allegations establishing this Court's personal jurisdiction over both DTNA and Daimler AG.  As to DTNA, Plaintiffs propose adding allegations regarding: (1) DTNA's relationships with dealers and customers in Kansas; (2) the use of DTNA's trucks on Kansas highways; (3) DTNA "deliberately exploit[ing] the Kansas market"; and (4) DTNA "deliberating target[ing] Kansas as a venue for the sale, service and use of defective and unreasonably dangerous DTNA truck[s]."[23]

Plaintiffs' proposed additional allegations regarding Daimler AG focus on its relationship to DTNA.  Plaintiffs propose adding that "DAIMLER AG represents on its website that DTNA is simply one of DAIMLER AG's brands" and that Daimler AG represents DTNA's trucks as its own.[24]  Plaintiffs also assert that Daimler AG purposefully directed its actions toward Kansas by virtue of DTNA's actions.  Finally, Plaintiffs specifically allege that because DTNA is registered to do business in Kansas and Daimler AG represents DTNA's trucks as its own, the Court has consent jurisdiction over both DTNA and Daimler AG.

## IV.   Discussion

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

Daimler AG argues that this Court lacks personal jurisdiction over it and that Fed. R. Civ. P. 12(b)(2) mandates that Plaintiffs' claims against it be dismissed.  Plaintiffs assert that Daimler AG is subject to both specific and general personal jurisdiction.  Plaintiffs do not allege facts that

---

[23]Doc. 61-1 at 6–7.  Although Plaintiffs argue that the Court erred in finding no personal jurisdiction as to DTNA other than through consent, they have not moved for reconsideration of the Court's prior, nor would such a motion be successful based on the additional facts alleged in the proposed Third Amended Complaint, as set forth below.

[24]*Id.* at 9.

would support this Court's exercise of specific personal jurisdiction over Daimler AG based on its own actions.  Rather, the gravamen of Plaintiffs' argument is that DTNA's contacts should be imputed to Daimler AG, and that by virtue of DTNA's actions, Daimler AG is subject to personal jurisdiction in this Court.  Thus, the Court will first address whether DTNA's contacts may be imputed to Daimler AG, and then turn to whether, if those contacts were imputed, they would be sufficient for the Court to exercise personal jurisdiction over Daimler AG.

### 1.    Imputing DTNA's Contacts to Daimler AG

Plaintiffs contend that DTNA's actions should be imputed to Daimler AG because of the relationship between Daimler AG and DTNA.  In the Tenth Circuit, courts apply the "alter ego" doctrine to determine whether a subsidiary's forum contacts may be imputed to a parent corporation for purposes of determining whether personal jurisdiction exists.[25]  "When a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of the presumption of corporate separateness."[26]  A holding or parent company is treated separately from its subsidiary "in the absence of circumstances justifying disregard of the corporate entity."[27]  "Circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized."[28]  "[T]he

---

[25]*Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (considering, for jurisdictional purposes, whether a subsidiary was "the general agent or alter ego" of the non-forum parent corporation); *see also Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974) (describing "the alter ego doctrine for jurisdiction over a nonresident parent corporation when a subsidiary corporation has transacted business within the state and the parent itself has not").

[26]*Warad W., LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed., Apr. 2015 update)).

[27]*Benton*, 375 F.3d at 1081 (quoting *Quarles*, 504 F.2d at 1362).

[28]*Quarles*, 504 F.2d at 1362 (citing *Garden City Co. v. Burden*, 186 F.2d 651 (10th Cir. 1951)).

primary consideration is the level of control exercised by the parent of the subsidiary,"[29] and for purposes of establishing jurisdiction, "there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily exercised by a parent corporation."[30]

In evaluating the degree of a parent corporation's control for jurisdictional purposes, courts consider factors such as: (1) whether the director or executives of the subsidiary take direction from the parent corporation rather than acting independently in the interest of the subsidiary; (2) whether the parent and subsidiary share directors or officers in common; (3) whether the parent corporation pays the salaries, expenses, or losses of the subsidiary; (4) whether the parent corporation finances the subsidiary; (5) whether the parent exercises control over the subsidiary's day-to-day operations; and (6) whether the two corporations have separate auditors, books and records, offices, officers and staff, bank accounts, tax returns, and payrolls.[31]

Here, Plaintiffs fall well short of demonstrating that DTNA is the "alter ego" of Daimler AG.   Notwithstanding months of jurisdictional discovery, Plaintiffs have not provided the Court with any information or evidence to suggest Daimler AG exercises sufficient control over DTNA for the Court to impute DTNA's actions to Daimler AG.  Plaintiffs have not shown that Daimler AG controls DTNA or its executive leadership; that Daimler AG has control over DTNA's daily operations; or that Daimler AG and DTNA have significant—if any—overlap in their corporate boards.  Plaintiffs have not alleged that Daimler AG financed DTNA or that Daimler AG and DTNA share payrolls and accounting records.  The only evidence indicating that Daimler AG may have some control over DTNA is Daimler AG's publicly available website, which represents DTNA as one of Daimler AG's "business units," and refers to DTNA's trucks as "our

---

[29] *Harris v. Am. Int'l Group, Inc.*, 923 F. Supp. 2d 1299, 1305 (W.D. Okla. 2013).

[30] *Id.*

[31] *See Quarles*, 504 F.2d at 1363.

trucks." The website, however, falls well short of demonstrating "domination of the day-to-day business decisions of the [subsidiary] and a disregard of the corporate entity of the [subsidiary]."[32]

Moreover, the uncontroverted affidavit of Daimler's in-house counsel establishes that "DTNA is a separate and distinct Delaware company" and that "Daimler AG did not design, manufacture, or distribute the [Freightliner] at issue in this Kansas lawsuit."[33]  Plaintiffs have not presented any factual basis to refute these statements or otherwise indicate that DTNA is the alter ego of Daimler AG.  As such, the Court finds it cannot impute DTNA's contacts to Daimler AG for jurisdictional purposes.

### 2.  Sufficiency of DTNA's Contacts to Confer Personal Jurisdiction

Even if Plaintiffs had demonstrated the kind of corporate relationship necessary to impute DTNA's contacts to Daimler AG, the Court has already determined that DTNA's contacts with Kansas—other than its registration to do business in the state—are insufficient to establish either specific or general personal jurisdiction.[34]  Plaintiffs do not make new arguments here that require the Court to alter its prior finding.  As set forth below, the Court lacks personal jurisdiction over Daimler AG.

### a.  Specific Jurisdiction

Specific jurisdiction exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"[35]  To establish minimum contacts for the exercise of specific jurisdiction within the bounds of due process, a plaintiff must show: (1) that the defendant

---

[32]*Id.*

[33]Hi-Zin Pak Decl. ¶¶ 5−5, Doc. 48-1.

[34]Doc. 45 at 10–11.

[35]*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alteration in original) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

purposefully directed activities at the forum state; and (2) that the plaintiff's injuries arise out of the defendant's forum-related activities.[36]  If a plaintiff shows that both the "purposeful direction" and "arising-out-of" prongs of the minimum-contacts test are satisfied, the burden then shifts to the defendant to show that the exercise of specific jurisdiction would "offend[ ] 'traditional notions of fair play and substantial justice.'"[37]

Plaintiffs assert that this Court has specific personal jurisdiction over Daimler AG, by virtue of its relationship with DTNA, pursuant to Kansas' long-arm statute[38] based on: (1) DTNA's transaction of business in Kansas; (2) DTNA's commission of tortious acts in Kansas; (3) DTNA's ownership of property in Kansas through a wholly-owned subsidiary; (4) DTNA's solicitation or service activities in Kansas, which caused injury to persons and property in Kansas; and (5) DTNA's introduction of products into the Kansas market in the ordinary course of trade or use.

Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," the Court here may "proceed directly to the constitutional issue."[39]  "Consequently, this [C]ourt 'need not conduct a statutory analysis apart from the due process analysis,'"[40] and proceeds to evaluate whether Plaintiffs' allegations as to

---

[36]*Helicopteros Nacionales*, 466 U.S. at 414; *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012).

[37]*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075–76 (10th Cir. 2004) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[38] K.S.A. § 60-308(b)(1).

[39]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-Op.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)); *see Merriman v. Crompton Corp.*, 146 P.3d 162, 179 (Kan. 2006) ("In Kansas, the long arm statute is construed liberally to assert jurisdiction over nonresident defendants to the full extent allowed by the Due Process Clause." (citing *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829 (Kan. 2002))).

[40]*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

DTNA are consistent with due process.

Plaintiffs primarily rely on a stream-of-commerce theory to establish DTNA—and by extension, Daimler AG—has sufficient minimum contacts for specific jurisdiction.  They argue that DTNA transacted business in Kansas within the meaning of K.S.A. § 60-308(b)(1)(A) and purposefully directed activities toward the forum by placing its products into the stream of commerce.  Those products, including the Freightliner, were then sold to authorized dealers and driven through Kansas.

Even assuming Plaintiffs' allegations demonstrated DTNA intended to serve the Kansas market and took "action[s] . . . purposefully directed toward the forum State"[41] sufficient to satisfy the purposeful-direction element of the due-process test, Plaintiffs have not established that their injuries arise out of DTNA's forum-related activities.

When a defendant has purposefully directed activities at the forum state, courts then consider whether the plaintiff's alleged injuries "arise out of" the defendant's forum-related contacts.[42]  Courts generally follow one of three approaches in analyzing this "nexus" requirement: (1) proximate causation, (2) but-for causation, or (3) substantial connection.[43]  The Tenth Circuit has rejected the substantial-connection approach outright,[44] but has considered the two causation-based approaches without choosing one or the other.[45]  Plaintiffs "satisf[y] the but-for standard if [they] show[ ] the defendant's forum-related activities were an 'event in the causal

---

[41]*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987).

[42]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

[43]*Id.*

[44]*Id.*

[45]*See id.* at 1078–79; *see also Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016) (unpublished); *Newsome v. Gallacher*, 722 F.3d 1257, 1269–70 (10th Cir. 2013); *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160–61 (10th Cir. 2010).

chain leading to the plaintiff's injury.'"[46]  "The proximate cause standard, 'by contrast, is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.'"[47]  Here, the Court need not decide which approach is more appropriate because Plaintiffs do not demonstrate the requisite nexus under either paradigm.

The relevant facts are that Daimler AG is a parent corporation of DTNA; that DTNA designed and manufactured the Freightliner; that DTNA sold the Freightliner to an authorized dealer; that the authorized dealer sold the Freightliner to Indian Creek LLC; that Indian Creek LLC employed Ford; and that Ford drove the Freightliner through Kansas at the time of the wreck.  There is no allegation that Daimler AG was directly involved in the sale of the Freightliner; nor are there allegations that the design or manufacture of the allegedly defectively designed components of the Freightliner occurred in Kansas or otherwise bore any relationship to Kansas.  Plaintiffs rely on the location of the wreck to establish the necessary relationship between Daimler AG and Kansas.  As the Court explained at length in its January 10 Order, even if the facts alleged by Plaintiffs show Daimler AG purposefully directed any actions to Kansas, Plaintiffs' injuries did not arise out of those contacts.[48]

Plaintiffs also argue that the Court may exercise specific jurisdiction over Daimler AG based on the alleged commission of tortious acts that caused injury to Plaintiffs in Kansas within the meaning of K.S.A. § 60-308(b)(1)(B), resulting in harmful effects felt in Kansas.  Although "[a]n injury occurring in Kansas as a result of tortious activity outside the state is considered a

---

[46]*Tomelleri*, 657 F. App'x at 796 (quoting *Dudnikov*, 514 F.3d at 1078).

[47]*Id.* (quoting *Dudnikov*, 514 F.3d at 1078).

[48]Doc. 45 at 10–11.

tortious act within the state for purposes of personal jurisdiction,"[49] Plaintiffs still must allege sufficient facts to show purposeful direction.

In the intentional tort context, courts apply the "effects test" set forth in *Dudnivok Chalk & Vermillion Fine Arts, Inc.*[50] to evaluate whether a defendant purposefully directed its suit-related activities at the forum.  That test, derived from the Supreme Court's decision in *Calder v. Jones*,[51] allows a plaintiff to establish purposeful direction by showing that the defendant took an intentional action that was expressly aimed at the forum state with knowledge that the brunt of the injury would be felt in the forum state.[52]  This test requires "more than simply harm suffered by a plaintiff who resides in the forum state."[53]  Rather, the defendant's activities must connect it "to the forum in a meaningful way."[54]  "[M]ere foreseeability of causing an injury in the forum state is . . . insufficient."[55]

Here, Plaintiffs bring a negligence-based claim and a strict liability claim based on the design of the Freightliner.  Plaintiffs' negligence claim states that Daimler AG "had a duty to design, test, manufacture and market its trucks, including the [Freightliner], in a manner which prevented or mitigated foreseeable front-end collisions," and that Daimler AG "breached [its] duty" because it did not "equip[ ] the [Freightliner] with FCW and AEB," which a company of ordinary prudence would have "done under the same or similar circumstances."[56]  Plaintiffs'

---

[49]*Bank of Blue Valley v. Lasker Kim & Co. LLP*, Case No. 15-9303-CM, 2016 WL 3881336, at *3 (D. Kan. July 18, 2016) (citing *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227–28 (D. Kan. 2000)).

[50]514 F.3d 1063, 1072 (10th Cir. 2008).

[51]465 U.S. 783 (1984).

[52]*Dudnikov*, 514 F.3d at 1072.

[53]*Old Repub. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 (10th Cir. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

[54]*Walden*, 571 U.S. at 290.

[55]*Dudnikov*, 514 F.3d at 1077.

[56]Doc. 36 at 13.

strict product liability claim states that the "Freightliner contained defects in the design, manufacture, testing, and warnings" because it lacked FCW and AEB systems "for crash prevention or crash mitigation and Defendants failed to provide any warning on the risks associated with [this] failure."[57]

In the Tenth Circuit, the effects test is satisfied only where allegations suggest that the defendant intended to cause injury, or cause consequences that the defendant knew would lead to injury, in the forum State.[58]  Notably, the Tenth Circuit has not extended the "harmful effects" theory of purposeful direction to cases involving unintentional torts such as negligent design defect and strict product liability.[59]

Even if the "harmful effects" framework applied to unintentional torts, the Supreme Court has explained that a plaintiff seeking to establish specific jurisdiction must show more than mere harm suffered by a plaintiff residing in the forum State.[60]  Plaintiffs have failed to adequately allege Daimler AG targeted an allegedly defective product to Kansas, or that the design and manufacture of those products bore any relationship to Kansas.  Thus, as set forth in greater length in the Court's prior opinion, Plaintiffs have not demonstrated that this Court has specific personal jurisdiction over DTNA, or by extension, Daimler AG.

---

[57]*Id.* at 12.

[58]*See Old Repub. Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017) ("Purposeful direction may also be established . . . when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." (citing *Calder v. Jones*, 465 U.S. 783, 790–91 (1984)); *Speedsportz, LLC v. Menzel Motor Sports, Inc.*, Case No. 07-CV-624-TCK-TLW, 2009 WL 2921295, at *9 (N.D. Okla. Sept. 8, 2009) ("[C]ourts have held that *Calder*'s 'effects test' has no application to negligence claims.") (citations omitted).

[59]*Old Repub. Ins. Co.*, 877 F.3d at 916 n.34.

[60]*Walden v. Fiore*, 571 U.S. 277, 289–90 (2014).

**b. General Jurisdiction**

Plaintiffs also argue that Daimler AG is subject to the Court's general jurisdiction. General personal jurisdiction permits a court to exercise power over a corporate defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."[61] "'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systemic general business contacts.'"[62] For a corporate defendant, paradigmatic bases for the exercise of general jurisdiction include the defendant's place of incorporation and the principal place of business.[63] General jurisdiction in a forum other than the defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where the defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State."[64] In contrast with specific jurisdiction, when a court finds that it has general personal jurisdiction over the defendant, that finding concludes the due-process inquiry and the defendant is subject to suit in the forum state for claims both with and without any connection to the state.[65]

[61]*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

[62]*Old Repub. Ins. Co.*, 877 F.3d at 903 (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)).

[63]*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

[64]*Id.* at 139 n.19.

[65]*Id.* at 139 n.20 (explaining that the "multipronged reasonableness check" is to be used "when specific jurisdiction is at issue," and stating that "[w]hen a corporation is genuinely at home in the forum State . . . any second-step [reasonableness] inquiry would be superfluous" (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113–14 (1987))).

Plaintiffs assert two bases for general jurisdiction over Daimler AG: (1) Daimler AG's substantial, continuous, systemic contacts with Kansas; and (2) imputing DTNA's consent to such jurisdiction through its registration to do business in Kansas to Daimler AG because of their corporate relationship. Daimler AG argues that its contacts with Kansas are not sufficient to confer general jurisdiction because those contacts do not render it "at home" in the state, nor is Daimler AG incorporated or headquartered in Kansas. Daimler AG also argues that DTNA's consent should not be imputed to it because the two are distinct legal entities that have, at all times, observed corporate formalities.

The Court finds that Plaintiffs fail to make specific allegations establishing that Daimler AG is subject to general personal jurisdiction in Kansas on the basis of its "substantial, systemic and continuous" business activities within the state. To find any defendant subject to the general personal jurisdiction of the Court because one of its indirect subsidiaries sells products through a network of authorized dealers including dealers in Kansas would be "unacceptably grasping" under the Supreme Court's reasoning in *Daimler AG v. Bauman*.[66] The Court therefore cannot exercise personal jurisdiction over Daimler AG on this basis.

The Court also rejects Plaintiffs' contention that it has general jurisdiction over Daimler AG by virtue of DTNA's consent to do business in Kansas. In its January 10, 2020 Order, the Court determined it has general jurisdiction over DTNA because it is registered to do business in Kansas, and such registration amounts to a constitutionally valid, express consent to jurisdiction in the forum.[67] Based on this finding, Plaintiffs contend that the Court should also exercise

---

[66]*Id.* at 138.

[67]Doc. 45 at 20–21.

general jurisdiction over Daimler AG, since DTNA is an indirect subsidiary or agent of Daimler AG.

Plaintiffs have cited no authority, and the Court has uncovered none, indicating that a subsidiary's consent to jurisdiction may be properly imputed to the parent corporation.  But even assuming *arguendo* that the Court could impute such consent, Plaintiffs have failed to demonstrate that DTNA and Daimler AG's corporate relationship is such that the Court may impute any of DTNA's actions to Daimler AG for jurisdictional purposes. The Court declines to exercise general personal jurisdiction over Daimler AG on this basis.

### B.      Plaintiffs' Motion for Leave to Amend

In response to both the Court's prior opinion and Daimler AG's motion to dismiss, Plaintiffs filed a motion for leave to file a Third Amended Complaint.  Plaintiffs explain that, although they "believe their second amended complaint sufficiently pleads personal jurisdiction as to both" DTNA and Daimler AG, they "seek leave to file a Third Amended Complaint that addresses the Court's concerns" as articulated in the Court's January 10 Order, "and the pleading issues raised by Daimler AG" in its motion to dismiss.[68]  Along with their motion, Plaintiffs filed their proposed Third Amended Complaint as an exhibit for the Court's review.[69]  As set forth above, the proposed Third Amended Complaint adds allegations about DTNA's actions, which Plaintiffs argue establish specific jurisdiction over DTNA.  Plaintiffs also add allegations regarding the relationship between Daimler AG and DTNA, which Plaintiffs argue establish personal jurisdiction over Daimler AG.

---

[68] Doc. 50 at 2.

[69] Doc. 50-1.

DTNA opposes Plaintiffs' motion for leave to amend on multiple grounds, including futility, while Daimler AG opposes only on futility grounds. Because the Court finds that DTNA and Daimler AG successfully demonstrate that Plaintiffs' proposed amendments are futile, it does not reach other possible bases for denying Plaintiffs' motion for leave to amend. As noted previously, "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason."[70]

Daimler AG and DTNA both reference the arguments made in Daimler AG's motion to dismiss, which have been discussed at length above, to support their contention that even accepting the proposed additional allegations of the Third Amended Complaint, Plaintiffs cannot establish personal jurisdiction over Daimler AG or broaden the basis for personal jurisdiction over DTNA. Daimler AG also states that Plaintiffs have been provided the benefit of jurisdictional discovery and are still unable to establish personal jurisdiction.

Regarding DTNA, the Court finds Plaintiffs' additional paragraphs in the proposed Third Amended Complaint insufficient to disturb the Court's prior finding that its lacks all but general personal jurisdiction based on consent by registration. The proposed amendments regarding DTNA focus heavily on how Plaintiffs believe DTNA purposefully directed activity toward Kansas; but the same problems identified in the Court's prior opinion remain. The proposed amendment does not identify Kansas connections *giving rise to* this suit sufficient to support specific jurisdiction. Instead, the proposed amendments identify some connections that DTNA may have had with Kansas, but none of these connections—sale, repair, marketing, and servicing of trucks—relate to the design decisions or manufacturing process of the Freightliner, which are

---

[70]*Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858–59 (10th Cir. 1999)).

the actions at the heart of this lawsuit.  Further, none of the proposed amendments provide a

basis for general jurisdiction over DTNA other than through consent, a source of general

personal jurisdiction that the Court has already determined it has.  DTNA is still not

headquartered in Kansas, still does not have its principal place of business in Kansas, and still

does not have such continuous, systematic contacts with Kansas that it could be considered "at

home" in the state.

Regarding Daimler AG, nothing in the proposed Third Amended Complaint supports

even a prima facie showing that Plaintiffs' injuries arose out of any contact Daimler AG may

have had with Kansas, thereby defeating any possibility of specific personal jurisdiction.  Nor

does the Third Amended Complaint make a prima facie showing that general personal

jurisdiction is warranted.  Like DTNA, Daimler AG is neither headquartered nor incorporated in

Kansas, nor does it have systematic contacts rendering it "at home" in the forum.  Plaintiffs'

proposed amendments also fail to establish the sort of relationship between Daimler AG and

DTNA necessary for the Court to impute DTNA's actions—including its consent to personal

jurisdiction in Kansas by way of its registration to do business in the forum—to Daimler AG.

Because amendment would be futile as to both Daimler AG and DTNA, the Court denies

Plaintiffs' motion for leave to amend.

## V.      Conclusion

Notwithstanding months of jurisdictional discovery, Plaintiffs have not met their burden

to establish personal jurisdiction over Daimler AG.  Plaintiffs do not demonstrate that DTNA's

contacts with Kansas may be properly imputed to Daimler AG; but even if Plaintiffs were able to

do so, the Court has already determined that the only basis on which it has personal jurisdiction

over DTNA is its registration to do business in Kansas.  Plaintiffs provide no legal or factual

basis for imputing DTNA's registration to Daimler AG, and the Court declines to do so. Additionally, because the proposed Third Amended Complaint fails to cure the jurisdictional defects identified in the Second Amended Complaint as to both Daimler AG and DTNA, the Court finds Plaintiffs' amendment would be futile.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Daimler AG's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 47) is **GRANTED and** Plaintiffs' Motion for Leave to File Their Third Amended Complaint (Doc. 50) is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 18, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE